UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTIAN OJOMO,

                              Plaintiff,

        v.                                          03-CV-0907

KRA Corporation, *et al*.

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1981, 42 U.S.C. §

1985, 42 U.S.C. § 2000e, and New York Executive Law § 296 ("Human Rights Law" or

"HRL"), claiming that he was discriminated against on account of his race, color, and national

origin.  Plaintiff also asserts claims for retaliation.  Presently before the Court is Defendants

KRA Corporation and Dennis Lamberd's unopposed motion for summary judgment pursuant

to FED. R. CIV. P. 56.  For the following reasons, Defendants' motion for summary judgment

is granted.

**I.       BACKGROUND**[1]

Defendant KRA provides professional services to governmental agencies.  Under a

contract with the United States Department of Labor, KRA operates the Academy in

Oneonta, New York.  The Academy is a residential training facility for disadvantaged youths.

KRA's sole shareholder and chief executive officer is Defendant Dennis Lamberd.[2]  There

were five director positions that reported directly to Lamberd - human resources, finance,

CSO, residential, and assistant director/staff training.

On or about December 11, 2001, Plaintiff was hired for the Academy's assistant

director position.  Immediately prior to working for KRA, Plaintiff worked for DESI.  DESI was

a subcontractor to KRA.  It appears that, while working at KRA, DESI contributed to some or

all of Plaintiff's salary. The terms of employment called for an initial 180 day probationary

period.  On April 25, 2002, Plaintiff was given a written performance notice concerning his

repeated failure to timely complete tasks and keep the director informed as to his

whereabouts and work schedule.

---

[1] The following facts are taken from Defendants' statement of material facts and are deemed to be true because Plaintiff failed to file an opposing statement of material facts.  N.D.N.Y.L.R. 7.1(a)(3).

As noted, Plaintiff failed to respond to the motion for summary judgment.  The Court declines to scrutinize the record to identify potential triable issues of material fact for Plaintiff or to make arguments on his behalf.  The Local Rules require the litigant, not the Court, to sift through the record and bring to the Court's attention the pertinent information. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree . . . that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000) (Noting that the local rules are "designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts. . . . While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.") (internal quotations and citations omitted).

[2] KRA is a minority owned and operated company.  Lamberd is African-American.

On April 28, 2002, Plaintiff was responsible for a group of students on a student trip. During the trip, the group stopped for fuel. Plaintiff entered the convenience store portion of the gas station. One of the students pumped the gas and the other students remained in the van. The student pumping the gas then lit a cigarette. The students in the van indicated to the student pumping the gas that he should not be smoking while pumping gas. The smoking student refused. The group of students inside the van then exited the van to attempt to have the other student extinguish the cigarette. The smoking student again refused and put the cigarette close to the nozzle of gas pump. At that time, one of the students knocked the cigarette out of the smoking student's hand. A fight ensued. A gas station clerk observed the events and called the police. As a result of the incident, one student was hospitalized and another arrested.

Following the incident, Plaintiff reported that he was present with the student who pumped the gas and that the fight broke out after the student went back inside the van and Plaintiff went inside to pay. The gas station clerk's version differed. After investigating the matter, Lamberd determined that Plaintiff exercised poor judgment in allowing a student to pump gas and failed to properly supervise the students. Lamberd decided to terminate Plaintiff's employment.

## II.      STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant

Case 3:03-cv-00907-TJM-DEP   Document 48   Filed 04/27/05   Page 4 of 12

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  With this standard in mind, the Court will address the defendant's motion.

## III.    DISCUSSION

### a.    Failure to Follow the Local Rules

Defendants filed their motion on April 5, 2005.[3]  Pursuant to N.D.N.Y.L.R. 7.1(b)(1), the motion was returnable on the Court's May 9, 2005 motion calendar.  The return date was properly indicated on Defendants' motion.  The local rules of this district further required opposing papers to be filed and served "not less than **SEVENTEEN DAYS** prior to the return

---

[3] Defendants initially filed their motion on March 23, 2005, but failed to file a statement of material facts as required by N.D.N.Y.L.R. 7.1(a)(d). Defendants cured this omission by filing a statement of material facts on April 5, 2005. Accordingly, the Court will use the April 5 date as the filing date.

date of the motion." N.D.N.Y.L.R. 7.1(b)(1). Thus, opposition papers were due on or before

April 22, 2005. The date upon which opposition papers were due also was clearly indicated

on the Court's docket. See Dkt. entry 46 (MOTION for Summary Judgment Motion Hearing

set for 5/9/2005 10:00 AM in Albany before Judge Thomas J. McAvoy. Response to Motion

due by 4/22/2005 Reply to Response to Motion due by 4/28/2005 by KRA Corporation,

Dennis Lamberd."). Local Rule 7.1(b)(3) provides that "[a]ny party who does not intend to

oppose a motion . . . shall promptly notify the Court and the other parties of such intention.

Notice should be provided at the earliest practicable date, but in any event no less than

**FOURTEEN CALENDAR DAYS** prior to the scheduled return date of the motion, unless for

good cause shown. **Failure to comply with this Rule may result in the Court imposing**

**sanctions.**" To date, no opposition papers have been filed. In fact, to date, Plaintiff has not

filed anything with the Court in response to the pending motion.

These requirements of the local rules should not be unfamiliar to Plaintiff's counsel.

All attorneys admitted to practice in this District are required to be familiar with the local rules.

See N.D.N.Y.L.R. 83.1. More troubling is that Plaintiff's counsel previously ran afoul of

N.D.N.Y.L.R. 7.1(b)(3) in this case, as a result of which the Court issued an Order explaining

the rule[4] and directing Plaintiff's counsel to show cause why he should not be sanctioned for

failing to comply therewith. See Dkt. No. 19. Based on Plaintiff's counsel's explanation, the

Court declined to impose sanctions. Now, circumstances have changed. Attorney Okoli was

specifically warned in the Court's most recent Order to "take greater care to ensure

---

[4] Since the prior Order, Local Rule 7.1(b)(3) has been amended to require a party who does not intend to oppose a motion to give the Court fourteen days notice of such intention. The prior rule required seven days notice. As a member of the bar of this District, Plaintiff's counsel is expected to be familiar with the amendments to the local rules.

compliance with the procedural requirements of this Court." See Dkt. No. 45, at 3.  Including

the present infraction, Plaintiff's counsel has deviated from the local rules on three separate

occasions.  See Dkt. No. 19 (failure to comply with N.D.N.Y.L.R. 7.1(b)(3); Dkt. No. 45

(failure to comply with General Order #22).  Accordingly, Attorney Okoli is again Ordered to

show cause why he should not be sanctioned for failing to comply with N.D.N.Y.L.R.

7.1(b)(3).

The Court will now turn to the substance of Defendants' motion.

### b.   Discrimination Claims

To establish a claim of disparate treatment, Plaintiff must demonstrate that: (1) he

is a member of the protected class; (2) he was qualified for the position; (3) he was subjected

to an adverse employment action; and (4) that the adverse employment action occurred

under circumstances giving rise to an inference of unlawful discrimination.  See Terry v.

Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  Under the familiar McDonnell Douglas burden

shifting scheme, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), if Plaintiff

establishes a prima facie case, there is a presumption of unlawful discrimination.  The

burden then shifts to the employer to proffer a legitimate, non-discriminatory reason for its

action.  If the employer satisfies this burden, any presumptions of discrimination are erased

and Plaintiff is left to submit sufficient evidence from which a fair-minded trier of fact could

reasonably conclude that "the defendant's employment decision was more likely than not

based in whole or in part on discrimination.'" Terry, 336 F.3d at 138 (quoting Stern v.

Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir. 1997)).

The Court will presume that Plaintiff can establish the first three elements of a prima facie case of discrimination.[5]  There is no evidence in the record, however, from which it reasonably may be concluded that Plaintiff was terminated under circumstances giving rise to an inference of unlawful discrimination.  At deposition, Plaintiff testified that he had no evidence that was treated differently from any female employees.  There is no other evidence in the record, admissible in form, from which it may reasonably be inferred that Plaintiff was discriminated against on account of his gender.  Thus, the gender discrimination claim must be dismissed.

With respect to Plaintiff's race, color, and national origin discrimination claims, Plaintiff testified that nobody at KRA ever made derogatory remarks to him.  Notably, there is no evidence in the record that Plaintiff was treated differently from any other employees for any reason.  Def.'s Stmnt. of Mat. Facts at ¶ 24-27.  When asked at deposition why he believed he was terminated, Plaintiff responded that it was because of financial issues and his performance.  Pl.'s Dep. at 198-200.  At deposition, Plaintiff was asked the following question and gave the following answer:

> Question:  If DESI hadn't pulled the salary contributions, do you still believe you'd be working for KRA Corporation?
>
> Answer:   I believe so.

It, thus, is apparent that not even Plaintiff believes he was terminated for an unlawful reason.  As such, he has failed to set forth a prima facie case of discrimination.

---

[5]For purposes of this motion, the Court will assume, without deciding, that Plaintiff properly exhausted all administrative remedies.  The Court recognizes that there is a serious question whether any gender discrimination claims were properly exhausted.

Assuming, *arguendo,* Plaintiff could establish a prima facie case of discrimination, Defendants have set forth a legitimate, non-discriminatory reason for terminating Plaintiff's employment.  Specifically, based on Plaintiff's performance issues, the incident at the gas station, and the evidence suggesting that Plaintiff did not tell Lamberd the truth concerning what happened at the gas station, Defendants had ample reason to terminate Plaintiff's employment.  In response, Plaintiff has failed to demonstrate that Defendants' legitimate, non-discriminatory reasons are a pretext for unlawful discrimination or that discrimination otherwise was a factor in his termination.  Accordingly, the Title VII claims must be dismissed.

Inasmuch as there is no evidence in the record from which a fair-minded trier of fact could reasonably conclude that Plaintiff was terminated on account of his race or color or any other protected classification, his claims pursuant to 42 U.S.C. §§ 1981 and 1985 also must be dismissed.

### c.   Retaliation

To "establish a prima facie case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.' "  Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995)).

Here, on or about April 16, 2002, Plaintiff filed a complaint of discrimination against DESI.  It appears that this was known to Defendants as they apparently assisted Plaintiff in filing his complaint.  Plaintiff was terminated in early May 2002, thereby satisfying the second element.  With respect to the third element, there is a close temporal relationship between

the filing of the charge of discrimination and Plaintiff's termination.  The Court, therefore,

finds that Plaintiff has met his minimal burden of establishing a prima facie case of

retaliation.

The burden now shifts to Defendants to articulate a legitimate, non-discriminatory

reason for terminating Plaintiff's employment.  As previously discussed, Defendants have

satisfied their burden in this regard.  Thus, any presumption of retaliation disappears and

Plaintiff is left to proffer evidence from which it reasonably may be inferred that he was

terminated because of protected activity.

The Court finds that Plaintiff has failed to sustain his burden.  For reasons

discussed *supra*, there is no evidence in the record from which it reasonably may be inferred

that Defendants' legitimate, non-discriminatory reasons are a pretext for unlawful retaliation.

Similarly, there is insufficient independent evidence of retaliation.  The Court is aware that, in

several cases, the Second Circuit has held that a close temporal relationship between the

protected conduct and the adverse employment action can create a triable issue of fact on

the issue of retaliation.  See Cifra v. General Electric, Co.*,* 252 F.3d 205, 217 (2d Cir. 2001).

The instant case does not, however, track the typical retaliation claim.

Here, the charge of discrimination at issue was not filed against Defendants, but

against DESI.  Without question, Title VII protects against retaliation for participation in

employment discrimination proceedings even if those proceedings involved a different entity.

See McMenemy v. City of Rochester, 241 F.3d 279, 283-84 (2d Cir. 2001).  Looking to the

temporal relationship between the timing of the protected activity and the adverse

employment action makes logical sense when the employee is complaining about the acts of

his employer or where there is evidence of a relationship between two entities such that it is

reasonable to infer that one entity may have reason to retaliate for an employee's protected activity against the other entity.  See McMenemy, 241 F.3d at 284-85 (noting that, in some circumstances, two entities may have a relationship that may give one of them an incentive to retaliate for an employee's protected activities against the other.).  It is questionable, however, whether such an inference logically can be drawn from such a temporal relationship when the entity that is the subject of the discrimination complaint does not have such a relationship with the entity that terminated the employment relationship.  Although DESI was a sub-contractor of KRA, there is no evidence in the record suggesting that KRA had reason to retaliate against Plaintiff on behalf of DESI.  Plaintiff has failed to present evidence substantiating a sufficient nexus between KRA and DESI from which a trier of fact could reasonably conclude that KRA had incentive to retaliate for Plaintiff's protected activity toward DESI.

Even assuming there was a sufficient relationship, Plaintiff's own deposition testimony compels the conclusion that there was no causal relationship between his protected activity and the termination of his employment.  Plaintiff testified at deposition that KRA employees actually helped him file the discrimination complaint against DESI by providing him with the necessary complaint papers and "helping [him] out . . . exactly what to do." Pl.'s Dep. at 159-60.  Perhaps most important is the fact that, as previously noted, Plaintiff testified that he believed he was discharged because of financial and performance reasons.  According to Plaintiff's understanding, he was terminated because of a budgetary deficit and the fact that DESI discontinued funding Plaintiff's position at KRA.  At deposition, Plaintiff testified that there was a conspiracy to terminate his employment "because they [didn't] want to pay . . . [his] salary. . . . [b]ecause there was a budget deficit of fifty-two

thousand dollars , and . . . there was a freeze on hiring staff." Pl.'s Dep. at 198-99.  At

deposition, Plaintiff explained the situation as follows:

> [S]ince DESI and KRA were paying my salary and then they realized I
> filed against DESI, then DESI stopped paying.  And then the best way for
> KRA to take action is to get rid of me.  Because they can't continue to pay
> my – they weren't able to pay my salary because of the deficit they have
> got already.

Pl.'s Dep. at 200.  If true, the discontinuance of funding leading to the termination of

Plaintiff's employment was caused by DESI; not KRA.  At deposition, Plaintiff was then asked

the following questions and gave the following answers:

> Question:  Am I correct that you believe KRA fired you because DESI had
> withdrawn their contribution to your salary?
>
> Answer:    That is correct.
>
> Question:  You believe that's the only reason they terminated you?
>
> Answer:  I mean that's – other reason is because I didn't fulfill the
> probationary period and because of the incident that happened, you
> know.

Pl.'s Dep. at 200.  Thus, under the facts and circumstances presented, the Court finds that

the temporal proximity between the filing of the charge of discrimination and the termination

of Plaintiff's employment (which is admittedly quite close) is insufficient to present a triable

issue of fact.  The evidence from Plaintiff's own mouth is that he was terminated because of

budgetary and performance issues; not on account of his having filed a charge of

discrimination against DESI.

**IV.      CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is

GRANTED and the Complaint is DISMISSED in its entirety.  Attorney Okoli shall show cause

within eleven days of the date of this Order why he should not be sanctioned for failing to

comply with N.D.N.Y.L.R. 7.1(b)(3).  Upon disposition of the sanctions issue, the Clerk of the

Court shall close the file in this matter.


IT IS SO ORDERED.


Dated:April 27,2005


Thomas J. McAvoy
Senior, U.S. District Judge